UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

OV THE FARM, LLC, a Michigan limited
liability company, BOWERS HARBOR
VINEYARD & WINERY, INC., a Michigan
corporation, and WINERIES OF THE OLD
MISSION PENINSULA ASSOCIATION., a
Michigan nonprofit corporation,

Honorable:

Case No:

       Plaintiffs,

v

PENINSULA TOWNSHIP, a Michigan municipal
corporation,

       Defendant.

---

MILLER, CANFIELD, PADDOCK
AND STONE, PLC
Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher J. Gartman (P83286)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
infante@millercanfield.com
ragatzki@millercanfield.com
gartman@millercanfield.com

Barry P. Kaltenbach
227 Monroe Street, Suite 3600
Chicago, IL 60606
(312) 460-4200
kaltenbach@millercanfield.com

---

## **COMPLAINT**

This case is related to *Wineries of the Old Mission Peninsula Association, et al. v. Peninsula Township*, Case No. 1:20-cv-1008 (W.D. Mich.), which is assigned to the Honorable Paul L. Maloney and Magistrate Judge Ray S. Kent.

## INTRODUCTION

1. The Wineries bring this action because Peninsula Township refuses to accept this Court's judgment entered in *Wineries of the Old Mission Peninsula Association, et al. v. Peninsula Township*, Case No. 1:20-cv-1008 (W.D. Mich.) (the "WOMP Case"). Peninsula Township is again attempting to infringe upon its residents' constitutional rights by pretending the WOMP Case never happened. Plaintiffs, therefore, seek declaratory and injunctive relief to prohibit the Township from enforcing restrictions this Court already ruled were not enforceable. Plaintiffs also seek relief from a noise ordinance the Township is now enforcing against at least one of the Wineries even though the Township's Ordinance Enforcement Officer has publicly and repeatedly stated that noise ordinance is unenforceable. Without that relief, Peninsula Township is threatening to shut down at least one Winery entirely and is likely to threaten others.

## PARTIES AND JURISDICTION

2. Plaintiff OV the Farm, LLC is a Michigan limited liability company which operates a winery under the trade name Bonobo Winery ("Bonobo") with its principal place of business in Peninsula Township, Grand Traverse County, located in the Western District of Michigan.

3. Plaintiff Bowers Harbor Vineyard & Winery, Inc. ("Bowers Harbor") is a Michigan corporation with its principal place of business in Peninsula Township, Grand Traverse County, located in the Western District of Michigan.

4. Plaintiff Wineries of the Old Mission Peninsula (WOMP) Association ("WOMP") is a Michigan nonprofit corporation with its principal place of business in Peninsula Township, Grand Traverse County, located in the Western District of Michigan.

5. WOMP is a voluntary membership trade association of licensed winery operations located on Peninsula Township's Old Mission Peninsula.

6. WOMP represents the unique interests of its members Bowers Harbor, Brys Estate Vineyard & Winery, Chateau Chantal, Chateau Grand Traverse, Hawthorne Vineyards, Mari Vineyards, Winery at Black Star Farms, Two Lads, Tabone Vineyards, and Peninsula Cellars.

7. Old Mission Peninsula's wine industry is a specialized segment of Michigan's larger economic community.

8. WOMP's purpose is to protect and promote the Old Mission Peninsula wine industry.

9. To that end, WOMP provides services to its members, such as advertising its members' services and products and organizing events at its members' locations to increase tourist traffic for its members and for Old Mission Peninsula as a whole.

10. Bonobo, Bowers Harbor, and all of the other WOMP members, and WOMP itself were plaintiffs in the WOMP Case.

11. WOMP has associational standing to protect its members' interests because (1) its members would otherwise have standing to sue in their own right, (2) the interests WOMP seeks to protect are germane to its organizational purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Friends of Tims Ford v. Tenn. Valley Authority*, 585 F.3d 955, 967 (6th Cir. 2009) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

12. Defendant Peninsula Township is a general law Township organized and existing under the laws of the State of Michigan with its offices located at 13235 Center Rd., Traverse City, Michigan.

13. This action arises under the United States Constitution and 42 U.S.C. § 1983.

14. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3

15. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

16. This Court has the authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

17. This Court has the authority to grant declaratory and injunctive relief under Federal Rules of Civil Procedure 57 and 65, respectively.

18. Venue is proper in this Court under 28 U.S.C. § 1391(b) because (i) Peninsula Township is located in Grand Traverse County which is in this judicial district and Defendant Sanders resides in this judicial district, and (ii) the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

19. Plaintiffs' claim for attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

20. On July 7, 2025, this Court "concluded that the Township has repeatedly and pervasively violated the Wineries' constitutional rights" and awarded the plaintiffs in the WOMP Case nearly $50 million in damages caused by Peninsula Township's unconstitutional enforcement of its winery ordinances.

21. This Court made findings of fact with respect to Bonobo, including:

> On May 14, 2013, the Board approved a Winery-Chateau SUP, designated SUP #118, for Bonobo. SUP #118 included Board approval for Guest Activity Uses. Bonobo called Todd Oosterhouse, its owner and General Manager. Bonobo planted its first vines in 2010 and opened to the public in 2014. Bonobo's winery property consists of 50 acres, with 23 acres of vines. Bonobo harvests 45-80 tons of grapes annually. Bonobo leases its property from a related entity, Oosterhouse Vineyards, LLC. Bonobo was a Winery-Chateau and holds licenses and permits from the MLCC.
>
> At trial, the Township focused on whether Bonobo qualified for "Guest Activity Uses." The Township questioned whether Bonobo planted sufficient acreage to comply with the Winery-Chateau Ordinance. There initially was a dispute between the parties on this issue, but it was resolved by a settlement agreement requiring

4

>Bonobo to plant an additional 5.95 acres of vines. Bonobo then planted a further 7.95 acres
>
>With this issue resolved, David Sanger, the Township's enforcement officer, told Bonobo it could have Guest Activity Uses if Bonobo submitted grape tonnage reports. Bonobo provided its tonnage reports, (ECF No. 611-34 at PageID.25836); (ECF No. 600 at PageID.23025), and was told it was approved for Guest Activity Uses.

(WOMP Case, ECF No. 623, PageID.31448–PageID.31449.)

22. With those findings of fact, this Court found that Bonobo was approved for Guest Activity Uses.

23. After finding that Bonobo was approved for Guest Activity Uses, this Court awarded Bonobo $555,942.40 and $6,393,837.50 for the Township's unconstitutional enforcement of its ordinances which prevented Bonobo from hosting small and large events, respectively. (WOMP Case, ECF No. 623, PageID.31479.)

24. This Court similarly awarded every WOMP member damages resulting from Peninsula Township's unconstitutional prohibition on hosting events on winery properties. (*Id.*)

25. The impact of this Court's judgment was to recognize that Bonobo and every WOMP member were lawfully allowed to host events on their properties.

26. Following this Court's judgment in the WOMP Case, Peninsula Township has waged a public relations and land use war against wineries within Peninsula Township.

27. Peninsula Township officials have repeatedly made public statements indicating that they disagree with this Court's judgment and that they do not intend to follow it.

28. On August 12, 2025, Township Clerk Becky Chown stated that the WOMP Case "was effectively lost when the township was sanctioned in 2021, creating prejudice in federal court[.]"  (**Exhibit 1: August 12, 2025 Meeting Minutes at 8**.)

29. Although not reflected in the actual meeting minutes, Clerk Chown also stated:

5

We have inherited a mess and we're doing our best to get out of it. I said this before, but the day Judge Maloney sanctioned Peninsula Township in the fall of 2021, we lost the case in federal court, we had to get through the case. We had to get through oral arguments. We had to get through the trial. We had to endure the verdict and judgment that was handed down knowing that we were going to lose. And we did. It was expected because when a judge sanctions you in federal court, the prejudice is so great that you just don't stand a chance.

30. Clerk Chown also stated:

If those wineries want to collect that judgment, come and get it. Bring it on. If they want that judgment from the residents of Peninsula Township, they should serve us with that order and take it and we will do what we have to do. … I can't fathom collecting on that judgment. And I want to believe that the wineries would never ever do that. I hope that they wouldn't. And I believe we will prevail in the Sixth Circuit Court of Appeals. I believe it with all my heart. and having read the 75-page judgment, I've never felt more confident in our position.

31. Clerk Chown's comments in paragraphs 28–30 reflect Peninsula Township's position following the judgment in the WOMP Case.

32. To date, the Wineries have refrained from enforcement of the judgment in the hope that a settlement could be reached.

33. The Township has ignored this Court's findings and damages award and has instead threatened to shut down Bonobo.

34. On November 21, 2025, the Township, through its attorney, sent a letter to Bonobo's attorney with the caption "Re: Violations of SUP # 118 occurring at 12011 Center Road, Traverse City, MI 49686." (**Exhibit 2: 11/21/25 Letter**) (the "November 21, 2025 Letter").

35. The Township asserted that Bonobo violated the Township's noise ordinance when it played music. (*Id.* **at 2**.)

36. The Township asserted that Bonobo held, or was planning to hold, private events, including holiday parties, rehearsal dinners and weddings, and a "Tuscan lunch." (*Id.* **at 1**.)

6

37. The Township asserted that those "events are not permitted by any section of the zoning ordinance for the A-1 Agricultural Zoning District, and we have no record that Bonobo was ever granted guest activity use approval via the Township." (*Id.* at 2.)

38. Through its November 21, 2025 Letter, the Township threatened to revoke Bonobo's special use permit and, effectively, shut Bonobo down. (*Id.* at 5*.*)

39. The November 21, 2025 Letter represents Peninsula Township's official and final position that "events are not permitted by any section of the zoning ordinance for the A-1 Agricultural Zoning District" with respect to Bonobo and every WOMP member.

## COUNT I – FIRST AMENDMENT RETALIATION AGAINST BONOBO
### (42 U.S.C. § 1983)

40. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

41. The First Amendment of the United States Constitution, through the Due Process Clause of the Fourteenth Amendment, is applicable to local units of government like Peninsula Township.

42. Bonobo has a First Amendment right to petition the Courts for redress of grievances against the government, including Peninsula Township.

43. Bonobo has a First Amendment right to engage in free speech, including the playing of music on its property.

44. Bonobo has a First Amendment right to host customers on its property.

45. By filing the WOMP Case as a plaintiff, Bonobo engaged in conduct protected by the First Amendment.

46. By playing music and hosting customers and events on its property, Bonobo engaged in conduct protected by the First Amendment.

45121284.2/159392.00002

47. Peninsula Township's November 21, 2025 Letter included the overt threat that Peninsula Township would revoke Bonobo's special use permit and shut Bonobo down if it did not comply with Peninsula Township's demands to cease playing music, hosting customers, holding events, and serving food.

48. Also implicit in the November 21, 2025 Letter was Peninsula Township's threat that it would continue similar enforcement activity against Bonobo if Bonobo did not abandon its damages award against Peninsula Township from the WOMP Case.

49. Peninsula Township's decision to send the November 21, 2025 Letter was motived at least in part as a response to Bonobo's exercise of its First Amendment rights, including filing the WOMP Case and exercising the operational rights clarified in the WOMP Case.

50. Upon information and belief, Peninsula Township's decision to send the November 21, 2025 Letter was motived at least in part to obtain leverage over Bonobo as part of settlement discussions related to the WOMP Case.

51. Peninsula Township's overt and implicit threats against Bonobo would chill a person of ordinary firmness from continuing to engage in the rights won in the WOMP Case and from continuing to prosecute the WOMP Case against the Township.

52. Bonobo has suffered damage as a result of Peninsula Township's retaliation.

WHEREFORE, Bonobo requests that this Court enter a judgment in its favor and against Peninsula Township (1) finding that Peninsula Township retaliated against Bonobo in violation of the First Amendment, (2) awarding Bonobo nominal damages; (3) awarding Bonobo its attorneys' fees under 42 U.S.C. § 1988 and also its costs incurred in bringing this challenge, and (4) awarding Bonobo any other relief the Court deems necessary and appropriate.

## COUNT II – DUE PROCESS – VOID FOR VAGUENESS
### (42 U.S.C. § 1983)

53. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

54. Plaintiffs have a First Amendment right to play music on their property.

55. Plaintiffs regularly plays music on their property to entice guests to come to the property and purchase their products.

56. Peninsula Township's current noise ordinance is Noise Ordinance No. 40, Amendment #1 (the "Noise Ordinance").  (**Exhibit 3: Noise Ordinance**.)

57. The Noise Ordinance defines a "noise disturbance" as "sound created by human activity with or without the use of any device, which by reason of its volume, intensity, location, or time of day impairs the health, welfare, or peace of another person of normal human sensibilities." (**Noise Ordinance, § 102.**)

58. The Noise Ordinance prohibits the "playing of any radio, television, phonograph, or other sound reproduction device, or musical instrument in such a manner or at such a volume as to be sufficiently audible to unreasonably annoy or disturb the quiet, comfort, or repose or person(s) in the vicinity." (*Id.*, **§ 103(A)**.)

59. Peninsula Township penalizes violations of the Noise Ordinance as a municipal civil infraction. (*Id.*, **§ 104**.)

60. Peninsula Township also treats violations of the Noise Ordinance as a reason to revoke a special use permit.

61. Peninsula Township has asserted that Bonobo violated § 102 and § 103(A) on September 20, 2025. (**Exhibit 2: 11/21/25 Letter at 3**.)

62. According to Peninsula Township, "Several people spoke with the Township and detailed the disturbance caused by this event." (*Id.*)

63. Peninsula Township has never identified any of these "Several people" to Bonobo.

64. Peninsula Township has further asserted that Bonobo violated the Noise Ordinance on September 30, 2023 and September 13, 2024.  (*Id.*)

65. Despite its assertion that Bonobo violated the Noise Ordinance on September 30, 2023 and September 13, 2024, Peninsula Township has not issued any written violations for those purported disturbances to Bonobo and has not taken any action against Bonobo for them.

66. Because of Peninsula Township's asserted violations, Peninsula Township is threatening to revoke Bonobo's special use permit and to shut down Bonobo's operations entirely.

67. Peninsula Township's Ordinance Enforcement Officer is David Sanger.

68. Mr. Sanger is also a Peninsula Township Trustee.

69. On multiple occasions before Bonobo's most recent alleged violation, Mr. Sanger has stated publicly and in his official capacity that the Noise Ordinance is "vague and unenforceable."

70. At a Township Board meeting on August 12, 2025, Mr. Sanger stated that the Noise Ordinance is "outdated and largely unenforceable" because it "relies on subjective judgment and lacks measurable standards."  (**Exhibit 1: 8/12/25 Meeting Minutes at 5**.)

71. At a Township Board meeting on September 9, 2025, Mr. Sanger stated that the current Noise Ordinance "is vague and unenforceable."  (**Exhibit 4: 9/9/25 Meeting Minutes at 2**.)

72. Even as to the incident on September 20, 2025, a Saturday, Mr. Sanger admitted that Bonobo stopped the offending sound right at 9:00 p.m.

45121284.2/159392.00002

73. The Noise Ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it does not provide fair notice of the type of conduct prohibited.

74. The Noise Ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it encourages subjective and discriminatory application by delegating to those empowered to enforce the ordinance the unfettered discretion to determine whether the Noise Ordinance has been violated.

75. The Noise Ordinance is unconstitutionally vague because it is overbroad in violation of the First Amendment.

76. The Michigan Court of Appeals has struck down language similar to § 102 because it penalized abstract ideals about what constitutes "peace and tranquility." *People of City of Grand Rapids v. Gasper*, 888 N.W.2d 116, 122 (Mich. Ct. App. 2016) ("A person making noise in a neighborhood is similarly required to guess whether law enforcement would consider his or her conduct as destroying the peace and tranquility of the neighborhood. Simply put, conduct that "destroy[s]" the peace and tranquility of some would not affect others to such an extent.").

77. The Supreme Court of the United States has struck down language similar to § 103(A) because it penalized conducted which "annoyed" others. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) ("Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.")

78. Peninsula Township's ordinance enforcement officer has already admitted that the Noise Ordinance is vague and unenforceable.

79. Bonobo has suffered harm from the threat of revocation of its special use permit and to the continued viability of its business.

80. Plaintiffs have suffered harm from the threat of similar enforcement.

81. Plaintiff have also been harmed by the chilling effect of the ordinance in that they has been forced to regulate their conduct while not being able to discern what is prohibited.

WHEREFORE, Plaintiffs request that this Court enter an order (1) declaring that § 102 and § 103(A) of the Noise Ordinance are unconstitutionally vague in violation of the Due Process Clause, (2) awarding Plaintiffs their attorneys' fees and costs incurred in bringing this challenge, and (3) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

## COUNT III – FIRST AMENDMENT VIOLATION
## (42 U.S.C. § 1983)

82. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

83. Plaintiffs have a First Amendment right to play music on their property.

84. Plaintiffs regularly plays music on their property as a form of speech to entice guests to come to their property and purchase their products as well as to entertain their guests.

85. Peninsula Township uses the Noise Ordinance to impose a ban on music at Bonobo which ban would likely extend to all Plaintiffs.

86. Peninsula Township's ban on music is not rationally related to any legitimate health, safety, or welfare interest.

87. Peninsula Township does not enforce the Noise Ordinance to ban music at any location other properties in Peninsula Township.

88. Bowers Harbor and WOMP's other members similarly fear Peninsula Township's arbitrary and unconstitutional enforcement of the Noise Ordinance against them.

89. Bonobo, Bowers Harbor, and WOMP's other members have suffered harm through a chilling effect from Peninsula Township's threatened enforcement of its Noise Ordinance against music at wineries.

WHEREFORE, Plaintiffs that this Court enter an order (1) declaring that the Noise Ordinance, both on its face and in and Peninsula Township's application of the Noise Ordinance, is unconstitutional in violation of the First Amendment, (2) awarding Plaintiffs their attorneys' fees and costs incurred in bringing this challenge, and (3) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

### COUNT IV –INTERFERENCE WITH DUE PROCESS LIBERTY INTEREST
### (42 U.S.C. § 1983)

90. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

91. Bonobo, Bowers Harbor, and every other WOMP member have a liberty interest, via the Due Process Clause of the Fourteenth Amendment, in operating their respective business free from arbitrary governmental interference. *See, e.g.*, *Sanderson v. Village of Greenhills*, 726 F.2d 284 (6th Cir. 1984); *Chalmers v. City of Los Angeles*, 762 F.2d 753 (9th Cir. 1985); *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969); *Small v. United States*, 333 F.2d 702, 704 (3d. Cir. 1964).

92. A government acts arbitrarily when it enforces restrictions that do not exist.

93. A government acts arbitrarily when it refuses to follow lawful court orders.

94. Peninsula Township has threatened to revoke Bonobo's special use permit and shut it down if it does not cease hosting events and providing food service.

95. Peninsula Township's position is based, in part, on its argument that it has "no record that Bonobo was ever granted guest activity use approval via the Township." (**Exhibit 2: 11/21/25 Letter at 2**.)

45121284.2/159392.00002

96. In entering judgment in favor of Bonobo, among others, this Court already found that the Township approved Bonobo for guest activity uses. *See* WOMP Case, ECF No. 623, PageID.31448–PageID.31449.

97. Therefore, the Township is barred by res judicata and/or collateral estoppel from relitigating the issue of whether the Township approved Bonobo for guest activity uses.

98. The Township's position that Bonobo was not approved for guest activity uses is arbitrary and therefore violates the Due Process Clause of the Fourteenth Amendment.

99. The Township also asserts that Bonobo has no vested right in hosting events even though this Court already ruled that Bonobo was damaged from the Township's refusal to allow Bonobo to host events in the past. (**Exhibit 2: 11/21/25 Letter at 3**.)

100. At trial, Bonobo presented evidence that it had hosted events over the years and that some of these events complied with the Township's unconstitutional ordinances while others were in violation of the unconstitutional ordinances.

101. Therefore, the Township is barred by res judicata and/or collateral estoppel from relitigating the issue of whether Bonobo is allowed to host events.

102. After the Township repealed the offending ordinances, Bonobo became a vested nonconforming use with the full ability to host events, and nothing has changed in Bonobo's ability to host events.

103. The Township also asserts that Bonobo cannot serve food. (**Exhibit 2: 11/21/25 Letter at 5**.)

104. In making that assertion, the Township ignores Bonobo's special use permit, which states in relevant part that "The Township Board finds that all uses permitted onsite shall take place within the principal structure meetings and special dinners shall be allowed wherein the

participants are not registered guests of the chateau-winery and such meetings and special dinners are for agricultural purposes/education only as permitted under the Peninsula Township Zoning Ordinance."

105.  The Township also asserts that Bonobo cannot engage in "facility rentals."

106.  The Township is conflating "facility rentals" with events to try and circumvent this Court's rulings on events from the WOMP Case.

107.  Absent a declaration from this Court, Bonobo, Bowers Harbor, and WOMP's other members will be harmed by Peninsula Township's arbitrary and unlawful interpretation of ordinance restrictions following the WOMP Case.

WHEREFORE, Plaintiffs request that this Court enter an order (1) declaring that, consistent with the findings in the WOMP Case, Plaintiffs have vested rights in hosting events at their respective wineries, (2) enjoining Peninsula Township from enforcing any restrictions on events or "facility rentals," however phrased, (3) declaring that Bonobo has the right to serve food at its winery and enjoining the Township from preventing food service; (4) awarding Plaintiffs their attorneys' fees and costs incurred in bringing this challenge, and (5) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

## COUNT V – STATE LAW PREEMPTION

108.  Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

109.  The Michigan Liquor Control Code allows on-premises licensees like wineries to operate restaurants.  *See* Mich. Comp. Laws § 436.1536(7)(h) ("A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises.").

110. Bonobo, Bowers Harbor, and WOMP's other members are all on-premise licensees and each member holds at least one of a wine maker, small wine maker, small distiller, or brandy manufacturer license issued by the Michigan Liquor Control Commission.

111. Under the Michigan Food Law, a "food service establishment" includes fixed and mobile restaurants. Mich. Comp. Laws § 289.1107(t).

112. Under the Michigan Food Law, restaurants are places "in which food or drink is prepared for direct consumption through service on the premises or elsewhere, and any other eating or drinking establishment or operation where food is served or provided for the public." Mich. Comp. Laws § 289.1107(t).

113. The Township has taken the position that "the provision of full-service meals is not allowable within the A-1 district." (**Exhibit 2: 11/21/25 Letter at 4**.)

114. The "provision of full-service meals" is equivalent to a restaurant. *See* Mich. Comp. Laws § 289.1107(t).

115. Peninsula Township does not allow any wineries to be operated in any district except the A-1 district.

116. Peninsula Township, therefore, does not allow any winery to operate a restaurant anywhere in Peninsula Township.

117. Peninsula Township's ban on restaurants in the A-1 district conflicts with, and is preempted by, Mich. Comp. Laws § 436.1536(7)(h).

WHEREFORE, Plaintiffs request that this Court enter an order (1) declaring that Peninsula Township's ban on wineries operating restaurants and providing "full-service meals" is preempted by Michigan law and are unlawful and unenforceable, (2) awarding Plaintiffs their attorneys' fees

and costs incurred in bringing this challenge, and (3) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

                                           Respectfully submitted,

                                  By:  /s/ Joseph M. Infante
                                              Joseph M. Infante (P68719)
                                              Stephen M. Ragatzki (P81952)
                                              Christopher J. Gartman (P83286)
                                              MILLER, CANFIELD, PADDOCK
                                              and STONE, PLC
                                              *Attorneys for Plaintiffs*
                                              99 Monroe Avenue NW, Suite 1200
                                              Grand Rapids, MI 49503
                                              (616) 776-6333
                                              infante@millercanfield.com
                                              gartman@millercanfield.com
                                              ragatzki@millercanfield.com

                                              Barry P. Kaltenbach
                                              227 Monroe Street, Suite 3600
                                              Chicago, IL 60606
                                              (312) 460-4200
                                              kaltenbach@millercanfield.com

Dated: November 26, 2025