# Exhibit 4

Peninsula Township
Township Board Regular Meeting
Shaina LaFond, Recording Secretary

# PENINSULA TOWNSHIP

13235 Center Road, Traverse City
MI 49686
www.peninsulatownship.com

**Township Board Regular Meeting**
**September 9, 2025, 7:00 p.m.**
**Township Hall**
**Minutes**

1. **Call to Order** by Sanders at 7:00 p.m.
2. **Pledge**
3. **Roll Call**
   Present: Sanders, Clark, Milliken, Alexander, Wunsch, Sanger
   Excused: Chown
4. **Governmental Updates**
   A. Pre-annual PDR Monitoring Letter from Susie Shipman to All PDR Owners: to be mailed after the meeting with monitoring beginning September 29. Questions may be directed to staff.
   B. Deputy France, CPO: report notes four electronic citations issued, three personal injury accidents, four regular accidents mostly on Center Road attributed to hurried driving and following too closely, and two arrests. No other new items reported.
5. **Conflict of Interest: none**
6. **Consent Agenda**
   A. Invoices
   B. Reports
      1. Fire Department
      2. Treasurer's Office
      3. Grand Traverse Sheriff's Office Citation, Accident, and Arrest Statistics
      4. Peninsula Community Library
   C. Minutes from August 12, 2025, Township Board Special and Regular Meeting Minutes
   D. EGLE Notice of Authorization to Dredge the DNR's East Arm Boating Access Site on M-37
   E. Correspondence
      1. Brian Tuck
      2. Marc Santucci
      3. Linda Brick/Patrick and Leslee Heintz
      4. Herbert Wayne Clewis
      5. Beckett & Raeder Response to Public Notice Comments from EGLE for the Proposed Boat Launches at Kelley Park

**Motion to approve the consent agenda as written made by Wunsch and seconded by Sanger.**
**Roll Call Vote: yes – Milliken, Alexander, Clark, Wunsch, Sanger, Sanders                    Passed unan**

1

Peninsula Township
Township Board Regular Meeting
Shaina LaFond, Recording Secretary

7. **Approve Agenda**
**Motion to approve the agenda made by Sanger and seconded by Alexander. Motion passed by consensus**

8. **Brief Citizen Comments (for agenda items only)**
**Troy Daily, 16169 Hill Rise Road:** expressed support for Sanger's proposed parking ordinance on Seven Hills Road, citing safety concerns near the community center entrance. Noted support for extending the no parking zone slightly beyond the entrance but stated the proposed northern boundary in the packet extends too far. Thanked the board for addressing the issue and urged adoption.
**Louis Santucci, 12602 Center Road:** reiterated his belief that Sanger has a financial conflict of interest and should recuse himself and suggested Sanders also step back from an enforcement role. On the noise ordinance, stated the draft is too complicated and contradictory and recommends a simpler model based on Cooperstown, New York, with clear decibel limits by district and time of day and simple exceptions, including for continuous animal noise. Provided a copy of the ordinance for board review and urged tabling the item for further study.

9. **Business:**
    1. Discussion of Parking Ordinance No. 60 with Action Possible (Sanger)

**Sanger:** summarized revisions, including removal of Devil's Dive and Center Road references, elimination of parking on the west side of Seven Hills, and addition of language allowing the board to add or delete prohibited parking areas by resolution rather than ordinance amendment.
Board discussion focused on the northern boundary of the no parking zone. Maps show current proposal extending 635 feet north to 13956; board members supported shortening the restriction to 300 feet, ending at the property line near 13786.
Deputy France confirmed safety is adequate at that point. Concern was raised about visibility for vehicles exiting the business on the west side of Seven Hills. Deputy France recommended prohibiting parking 60 feet north and south of the driveway entrance. Board agreed to include this language.
Additional discussion was held on signage issues near Haserot Beach. Members noted poor signage and safety concerns for pedestrians crossing from overflow parking. Staff to coordinate with road commission on repainting and signage improvements.
Consensus reached on ordinance language: prohibit parking on the east side of Seven Hills from Devil's Dive to 13786 and on the west side 60 feet north and south of the business entrance.
**Motion to adopt Parking Ordinance No. 60 as amended made by Alexander, seconded by Wunsch.**
**Roll Call Vote: yes – Milliken, Alexander, Clark, Wunsch, Sanger, Sanders          Passed unan**

   2. Discussion of Proposed Noise Ordinance No. 61 (Sanger)

**Sanger:** reviewed history, noting current ordinance from 2010 is vague and unenforceable. Draft ordinance prepared by legal counsel draws on examples from other communities, shifting focus from "impairing health or welfare" to "annoying or disturbing a reasonable person of normal sensitivity." Draft also incorporates decibel limits, time restrictions, and prima facie violations such as barking dogs and construction noise.
Board raised concerns regarding decibel levels in commercial areas, impacts on agricultural zones, and clarity of enforcement procedures. Discussion included use of sound meters, measurement standards, calibration, and training for enforcement officers. Members emphasized need for clear, consistent procedures and noted limited local law enforcement coverage compared to larger communities. Board agreed further review is required. Legal counsel analysis will be distributed, and additional input from

2

Peninsula Township
Township Board Regular Meeting
Shaina LaFond, Recording Secretary

law enforcement will be sought. Matter tabled to October for further refinement, with possibility of scheduling a public hearing in November.

3. Overview of Bids Received for Materials (Bid One) and Construction 9Bid Two) of the Sustainable Boardwalk in the Hemlock Wing at Pelizzari Natural Area (Dave Murphy, Chair of the Parks Committee) with Action Expected at the September 23 Township Board Regular Meeting

**Murphy**: outlined project history, noting that fundraising led by Becky Chown met and surpassed the proposed $409,000 budget. Engineering firm Gosling-Czubak, with lead engineer Dallas Wirtz, issued bid requests. Two bids for off-site boardwalk module construction are close in price; several installation bids vary more widely. Engineers will review details, ensure comparisons are consistent, and present recommendations at the September 23 board meeting. Project completion expected in spring 2026, with possible earlier manufacturing but likely no winter construction. Board noted that contract awards for both manufacturing and installation will be on the September 23 agenda.

4. Request for Budget Amendments with Action Expected (Clark)

**Clark:** reviewed request for budget amendments. Explained amendments, noting most are line adjustments or from fund balance, with one related to compactor station funding already appropriated in April. Board agreed items are straightforward.
**Motion to approve budget amendments made by Wunsch, seconded by Milliken.**
**Roll Call Vote: yes – Milliken, Alexander, Clark, Wunsch, Sanger, Sanders           Passed unan**

5. Discussion of Opening on Traverse Transportation Coordinating Initiative (TTCI) via Networks Northwest (Sanders)

Board discussed the township's vacant technical committee seat with TTCI, a body that allocates federal road funding for the Traverse City metropolitan area. Sanders noted Peninsula Township has limited influence, with most focus on east-west transit, but representation may be valuable for non-motorized planning and M-37 traffic impacts. Options included appointing the township engineer of record (e.g., Gourdie-Fraser) or a community member with interest in non-motorized issues. Concern was raised about paying consultants to fill the role. Suggestion to explore volunteers from local non-motorized groups. Sanders will consult Susie Shipman and Dave Murphy for candidate ideas. No action taken; item remains open for future consideration.

## 10. Citizen Comments:

**Marty Lagina, 232 West McKinley Road:** objected to his letter on the proposed noise ordinance not being listed under correspondence, stating it was hidden in the packet. Urged consistent treatment of all citizen letters. On the ordinance, advised board to eliminate use of "plainly audible" as a prima facie violation, explaining that on the DBA scale, "plainly audible" equals zero, which would make common sounds such as a baby crying or a lullaby through a window violations. Stated the standard is unworkable and would put everyone in violation. Noted his professional engineering background with wind farms and compressor stations and offered to provide further input.

## 11. Board Comments

Confirmation that citizen letters, such as Marty Lagina's, should be consistently listed under correspondence. Staff oversight due to the clerk's vacation may explain the omission.
**Sanger** reminded the board that in January, two main objectives were set for the year: zoning ordinance work and financial planning. Suggested using the September 23 meeting to benchmark progress, noting that the second monthly meeting was intended for planning and internal focus.

3

Peninsula Township
Township Board Regular Meeting
Shaina LaFond, Recording Secretary

**Sanders** recommended rebidding township professional services (engineer, legal, etc.) as a best practice, potentially adding other categories such as surveyor or appraiser. Suggested placing this on the January agenda.

**Sanders** offered two recent legal updates: *Family Orchards v. Peninsula Township*, the township's motion to dismiss was granted in full by Judge Paul Maloney, though the plaintiff may still appeal. Also, the Wineries of Old Mission Peninsula (WOMP) filed an appeal with the U.S. 6th Circuit Court of Appeals. Information has been posted on the township website under WOMP filings.

**Alexander** thanked members of the Survey Ad Hoc Committee (Dave Murphy, Shaina LaFond, Armen Shanafelt, John Jacobs, and Dennis Arouca) for their work. Highlighted that Arouca drafted a preamble that may be useful for residents as background before completing the survey.

**Sanders** thanked Alexander for leading the committee effort.

1. Adjournment

**Motion to adjourn made by Alexander, seconded by Sanger.** **Passed unan**

**Meeting adjourned at 8:08 p.m.**

4

Peninsula Township
Township Board Regular Meeting
Shaina LaFond, Recording Secretary

5

9/9n.5, 6:45 PM                                                                                                              Gmail - sound ordinance

# Gmail

louis santucci <santucci.louis@gmail.com>

## sound ordinance
1 message

**louis santucci** <santucci.louis@gmail.com>                                                                   Tue, Sep 9, 2025 at 6:43 PM
To: louis santucci <santucci.louis@gmail.com>

Except as otherwise expressly permitted in this section, it shall be prima facie evidence of a violation of this chapter if the sound level emanating from any sound device or apparatus is measured at a decibel level that exceeds 70 dB within residential districts or 80 dB within the business and commercial districts between 7:00 a.m. and 10:00 p.m. or 60 dB between 10:00 p.m. and 7:00 a.m. in any district from one or more of the following locations:

(a) Upon a public sidewalk adjacent to the premises upon which the sound device or apparatus is being operated or used; and/or

**(b)** Upon any property adjacent to the premises upon which the sound device or apparatus is being operated or used; and/or

(c) At a distance of 30 feet or more from such sound device or apparatus when used or operated in a public park or other public place.

he following acts are declared to be prima facie evidence of a violation of this chapter. This enumeration shall not be deemed exclusive.

**A.** Noise from a dog or other animal or fowl that is continuous and exceeds 15 minutes.

**B.** Noise from a burglar alarm system or other alarm system of any building, motor vehicle or boat that is continuous or repetitive and exceeds 15 minutes. This section shall not apply to audible alarm systems that are designed to detect heat or smoke or in instances where the alarm system is working as intended and an actual or attempted burglary has occurred.

**C.** The sounding of any horn or signaling device of any motor vehicle, motorcycle, train, or boat, except when required by other statute, which is continuous or repetitive or is apparently being sounded or being used for the purpose of advertisement.

**D.** The making of improper or unnecessary noise by operating a motor vehicle in such a manner as to cause the excessive squealing or other excessive noise of the tires.

**E.** The operation of an audio device from any motor vehicle at sound levels which may be heard at a distance of 60 feet from the vehicle.

F. The operation of a motor vehicle that is not equipped with an adequate muffler and exhaust system in constant operation and properly maintained to prevent any excessive or unusual noise, or the operation of a motor vehicle with a muffler or exhaust system modified in a manner that will amplify or increase the noise emitted by the motor or exhaust system of such vehicle above that emitted by the muffler or exhaust system originally installed on the vehicle.

G. The operation of an engine compression brake to slow or stop a motor vehicle in the Village.

H. The hawking, peddling, or sale of anything by shouting or outcry or by using horns, whistles, bells or any other instrument to attract attention for that purpose within any area of the Village.

### § 172-7 Exceptions.

The following sounds shall be exempt from the restrictions and prohibitions of this section and shall not be deemed a violation of this chapter:

A. Church bells: sounds created by bells or chimes emanating from religious institutions between the hours of 7:00 a.m. and 10:00 p.m.

B. Warning devices: sounds created by any government agency, or by the use of public agency warning devices.

C. Fireworks: the professional display of fireworks that has been approved by the Village Board of Trustees.

D. Sporting events and public entertainment: sounds emanating from sporting events of any public or private schools and/or any Village-authorized carnival, fair, exhibition, outdoor concert, parade, and/or athletic contest, conducted between 7:00 a.m. and 11:00 p.m.

E. Construction activities: sounds created by activities associated with site improvements and building construction, repair and maintenance between the hours of 7:00 a.m. and 10:00 p.m. Sounds created by construction activities between the hours of 10:00 p.m. and 7:00 a.m. shall be subject to the limitations of this section, except that in the event of an emergency, so declared by the Fire Department or Police Department, construction activities directly connected to the abatement of such emergency may be undertaken without regard to the prohibitions and limitations of this section for a period not to exceed 72 hours from the commencement of such construction activities, during which time application for a sound permit or sound level variance shall be made.

F. Residential property maintenance: sounds produced by the use of lawn mowers, hedge trimmers, leaf blowers, chain saws, tillers, mulchers, chippers, and other similar residential power tools and devices used in the care and

maintenance of lawns, yards, and vegetation between the hours of 7:00 a.m. and 10:00 p.m.

G. Snow removal operations: sounds produced by snow blowers, snow throwers, and snowplows when used in their customary manner, provided that all equipment is equipped with exhaust mufflers recommended by the manufacturers thereof.

H. Governmental operations: sounds produced by vehicles, equipment, and machines engaged in the conduct of governmental functions of any federal, state or local municipal entity.

I. Federally preempted activities: sounds produced by activities which are beyond the jurisdiction of the Village to regulate based upon the federal interstate commerce clause.

§ 172-8