UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

OV THE FARM, LLC, a Michigan limited
liability company, BOWERS HARBOR
VINEYARD & WINERY, INC., a Michigan
corporation, and WINERIES OF THE OLD
MISSION PENINSULA ASSOCIATION., a
Michigan nonprofit corporation,

Case No: 1:25-cv-1588

Honorable: Paul L. Maloney

   Plaintiffs,

v

PENINSULA TOWNSHIP, a Michigan municipal
corporation,

   Defendant.

---

MILLER, CANFIELD, PADDOCK
AND STONE, PLC
Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher J. Gartman (P83286)
Attorneys for Plaintiffs
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
infante@millercanfield.com
ragatzki@millercanfield.com
gartman@millercanfield.com

Barry P. Kaltenbach
227 Monroe Street, Suite 3600
Chicago, IL 60606
(312) 460-4200
kaltenbach@millercanfield.com

STRAUB, SEAMEN & ALLEN, P.C.
James T. McGovern (P79410)
Ross A. Holec (P79489)
Attorneys for Defendant
1014 Main Street, P.O. Box 318
St. Joseph, MI 49085
(269) 982-1600
jmcgovern@lawssa.com
rholec@lawssa.com

---

## **FIRST AMENDED COMPLAINT**

This case is related to *Wineries of the Old Mission Peninsula Association, et al. v. Peninsula Township*, Case No. 1:20-cv-1008 (W.D. Mich.), which is assigned to the Honorable Paul L. Maloney and Magistrate Judge Ray S. Kent

45486403.3/159392.00003

## INTRODUCTION

1.    The Wineries bring this action because Peninsula Township refuses to accept this Court's judgment entered in *Wineries of the Old Mission Peninsula Association, et al. v. Peninsula Township*, Case No. 1:20-cv-1008 (W.D. Mich.) (the "WOMP Case").  Peninsula Township is again attempting to infringe upon its residents' constitutional rights by pretending the WOMP Case never happened.  Plaintiffs, therefore, seek declaratory and injunctive relief to prohibit the Township from enforcing restrictions this Court already ruled were not enforceable.  Plaintiffs also seek relief from a noise ordinance the Township is now enforcing against at least one of the Wineries even though the Township's Ordinance Enforcement Officer has publicly and repeatedly stated that noise ordinance is unenforceable.  Without that relief, Peninsula Township is threatening to shut down at least one Winery entirely and is likely to threaten others.

## PARTIES AND JURISDICTION

2.    Plaintiff OV the Farm, LLC is a Michigan limited liability company which operates a winery under the trade name Bonobo Winery ("Bonobo") with its principal place of business in Peninsula Township, Grand Traverse County, located in the Western District of Michigan.

3.    Plaintiff Bowers Harbor Vineyard & Winery, Inc. ("Bowers Harbor") is a Michigan corporation with its principal place of business in Peninsula Township, Grand Traverse County, located in the Western District of Michigan.

4.    Plaintiff Wineries of the Old Mission Peninsula (WOMP) Association ("WOMP") is a Michigan nonprofit corporation with its principal place of business in Peninsula Township, Grand Traverse County, located in the Western District of Michigan.

5.    WOMP is a voluntary membership trade association of licensed winery operations located on Peninsula Township's Old Mission Peninsula.

45486403.3/159392.00003

6.  WOMP represents the unique interests of its members Bowers Harbor, Brys Estate Vineyard & Winery, Chateau Chantal, Chateau Grand Traverse, Hawthorne Vineyards, Mari Vineyards, Winery at Black Star Farms, Two Lads, Tabone Vineyards, and Peninsula Cellars.

7.  Old Mission Peninsula's wine industry is a specialized segment of Michigan's larger economic community.

8.  WOMP's purpose is to protect and promote the Old Mission Peninsula wine industry.

9.  To that end, WOMP provides services to its members, such as advertising its members' services and products and organizing events at its members' locations to increase tourist traffic for its members and for Old Mission Peninsula as a whole.

10.  Bonobo, Bowers Harbor, and all of the other WOMP members, and WOMP itself were plaintiffs in the WOMP Case.

11.  WOMP has associational standing to protect its members' interests because (1) its members would otherwise have standing to sue in their own right, (2) the interests WOMP seeks to protect are germane to its organizational purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Friends of Tims Ford v. Tenn. Valley Authority*, 585 F.3d 955, 967 (6th Cir. 2009) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

12.  Defendant Peninsula Township is a general law Township organized and existing under the laws of the State of Michigan with its offices located at 13235 Center Rd., Traverse City, Michigan.

13.  This action arises under the United States Constitution and 42 U.S.C. § 1983.

14.  The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3

15.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

16.     This Court has the authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

17.     This Court has the authority to grant declaratory and injunctive relief under Federal Rules of Civil Procedure 57 and 65, respectively.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because (i) Peninsula Township is located in Grand Traverse County which is in this judicial district and Defendant Sanders resides in this judicial district, and (ii) the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

19.     Plaintiffs' claim for attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

20.     On July 7, 2025, this Court "concluded that the Township has repeatedly and pervasively violated the Wineries' constitutional rights" and awarded the plaintiffs in the WOMP Case nearly $50 million in damages caused by Peninsula Township's unconstitutional enforcement of its winery ordinances.

21.     This Court made findings of fact with respect to Bonobo, including:

On May 14, 2013, the Board approved a Winery-Chateau SUP, designated SUP #118, for Bonobo. SUP #118 included Board approval for Guest Activity Uses. Bonobo called Todd Oosterhouse, its owner and General Manager. Bonobo planted its first vines in 2010 and opened to the public in 2014. Bonobo's winery property consists of 50 acres, with 23 acres of vines. Bonobo harvests 45-80 tons of grapes annually. Bonobo leases its property from a related entity, Oosterhouse Vineyards, LLC. Bonobo was a Winery-Chateau and holds licenses and permits from the MLCC.

At trial, the Township focused on whether Bonobo qualified for "Guest Activity Uses." The Township questioned whether Bonobo planted sufficient acreage to comply with the Winery-Chateau Ordinance. There initially was a dispute between the parties on this issue, but it was resolved by a settlement agreement requiring

4

Bonobo to plant an additional 5.95 acres of vines. Bonobo then planted a further 7.95 acres

With this issue resolved, David Sanger, the Township's enforcement officer, told Bonobo it could have Guest Activity Uses if Bonobo submitted grape tonnage reports. Bonobo provided its tonnage reports, (ECF No. 611-34 at PageID.25836); (ECF No. 600 at PageID.23025), and was told it was approved for Guest Activity Uses.

(WOMP Case, ECF No. 623, PageID.31448–PageID.31449.)

22.    With those findings of fact, this Court found that Bonobo was approved for Guest Activity Uses.

23.    After finding that Bonobo was approved for Guest Activity Uses, this Court awarded Bonobo $555,942.40 and $6,393,837.50 for the Township's unconstitutional enforcement of its ordinances which prevented Bonobo from hosting small and large events, respectively. (WOMP Case, ECF No. 623, PageID.31479.)

24.    This Court similarly awarded every WOMP member damages resulting from Peninsula Township's unconstitutional prohibition on hosting events on winery properties. (*Id.*)

25.    The impact of this Court's judgment was to recognize that Bonobo and every WOMP member were lawfully allowed to host events on their properties.

26.    Following this Court's judgment in the WOMP Case, Peninsula Township has waged a public relations and land use war against wineries within Peninsula Township.

27.    Peninsula Township officials have repeatedly made public statements indicating that they disagree with this Court's judgment and that they do not intend to follow it.

28.    On August 12, 2025, Township Clerk Becky Chown stated that the WOMP Case "was effectively lost when the township was sanctioned in 2021, creating prejudice in federal court[.]" (**Exhibit 1: August 12, 2025 Meeting Minutes at 8**.)

29.    Although not reflected in the actual meeting minutes, Clerk Chown also stated:

45486403.3/159392.00003

We have inherited a mess and we're doing our best to get out of it. I said this before, but the day Judge Maloney sanctioned Peninsula Township in the fall of 2021, we lost the case in federal court, we had to get through the case. We had to get through oral arguments. We had to get through the trial. We had to endure the verdict and judgment that was handed down knowing that we were going to lose. And we did. It was expected because when a judge sanctions you in federal court, the prejudice is so great that you just don't stand a chance.

30.     Clerk Chown also stated:

If those wineries want to collect that judgment, come and get it. Bring it on.  If they want that judgment from the residents of Peninsula Township, they should serve us with that order and take it and we will do what we have to do. … I can't fathom collecting on that judgment. And I want to believe that the wineries would never ever do that. I hope that they wouldn't. And I believe we will prevail in the Sixth Circuit Court of Appeals. I believe it with all my heart. and having read the 75-page judgment, I've never felt more confident in our position.

31.     Clerk Chown's comments in paragraphs 28–30 reflect Peninsula Township's position following the judgment in the WOMP Case.

32.     The Township has ignored this Court's findings and damages award and has instead threatened to shut down Bonobo.

33.     On November 21, 2025, the Township, through its attorney, sent a letter to Bonobo's attorney with the caption "Re: Violations of SUP # 118 occurring at 12011 Center Road, Traverse City, MI 49686."  (**Exhibit 2: 11/21/25 Letter**) (the "November 21, 2025 Letter").

34.     The Township asserted that Bonobo violated the Township's noise ordinance when it played music.  (*Id.* **at 2**.)

35.     A copy of Peninsula Township's then-effective noise ordinance (the "Old Noise Ordinance") is attached as **Exhibit 3: Old Noise Ordinance No. 40, Amendment #1**.

36.     The Township also asserted that Bonobo held, or was planning to hold, private events, including holiday parties, rehearsal dinners and weddings, and a "Tuscan lunch."  (**Exhibit 2: 11/21/25 Letter at 1**.)

6

37.     The Township asserted that those "events are not permitted by any section of the zoning ordinance for the A-1 Agricultural Zoning District, and we have no record that Bonobo was ever granted guest activity use approval via the Township."  (*Id.* **at 2**.)

38.     Through its November 21, 2025 Letter, the Township threatened to revoke Bonobo's special use permit and, effectively, shut Bonobo down.  (*Id.* **at 5**.)

39.     The November 21, 2025 Letter represents Peninsula Township's official and final position that "events are not permitted by any section of the zoning ordinance for the A-1 Agricultural Zoning District" with respect to Bonobo and every WOMP member.

40.     The November 21, 2025 Letter was not a mere request for "voluntary compliance" but instead an overt threat to Bonobo.

41.     Given the Township's long history of arbitrary enforcement against Bonobo, as outlined in the testimony of Todd Oosterhouse during the WOMP Case, Bonobo, Bowers Harbor, and the other WOMP members have no reason to believe that the Township's request for "voluntary compliance" would lead to anything other than official enforcement and revocation of the ability to operate.

42.     Even the Township's attorneys treated the November 21, 2025 Letter as an enforcement activity.  The attorneys billed the Township for "2025 BONOBO ENFORCEMENT" as listed in the invoices for the Township Board's January 27, 2026 meeting packet.  (**Exhibit 4: Fahey Schultz Invoice Amount**.)

43.     After Plaintiffs filed their initial complaint in this matter, Peninsula Township repealed its prior noise ordinance and replaced it with a new noise ordinance (the "New Noise Ordinance").  (**Exhibit 5: New Noise Ordinance, Ordinance No. 62 of 2025**.)

7

## COUNT I – FIRST AMENDMENT RETALIATION AGAINST BONOBO
### (42 U.S.C. § 1983)

44.    Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

45.    The First Amendment of the United States Constitution, through the Due Process Clause of the Fourteenth Amendment, is applicable to local units of government like Peninsula Township.

46.    Bonobo has a First Amendment right to petition the Courts for redress of grievances against the government, including Peninsula Township.

47.    Bonobo has a First Amendment right to engage in free speech, including the playing of music on its property.

48.    Bonobo has a First Amendment right to host customers on its property.

49.    By filing the WOMP Case as a plaintiff, Bonobo engaged in conduct protected by the First Amendment.

50.    By playing music and hosting customers and events on its property, Bonobo engaged in conduct protected by the First Amendment.

51.    Peninsula Township's November 21, 2025 Letter included the overt threat that Peninsula Township would revoke Bonobo's special use permit and shut Bonobo down if it did not comply with Peninsula Township's demands to cease playing music, hosting customers, holding events, and serving food.

52.    Also implicit in the November 21, 2025 Letter was Peninsula Township's threat that it would continue similar enforcement activity against Bonobo if Bonobo did not abandon its damages award against Peninsula Township from the WOMP Case.

45486403.3/159392.00003

53.     Peninsula Township's decision to send the November 21, 2025 Letter was motived at least in part as a response to Bonobo's exercise of its First Amendment rights, including filing the WOMP Case and exercising the operational rights clarified in the WOMP Case.

54.     Upon information and belief, Peninsula Township's decision to send the November 21, 2025 Letter was motived at least in part to obtain leverage over Bonobo as part of settlement discussions related to the WOMP Case.

55.     Peninsula Township's overt and implicit threats against Bonobo would chill a person of ordinary firmness from continuing to engage in the rights won in the WOMP Case and from continuing to prosecute the WOMP Case against the Township.

56.     Bonobo has suffered damage as a result of Peninsula Township's retaliation.

WHEREFORE, Bonobo requests that this Court enter a judgment in its favor and against Peninsula Township (1) finding that Peninsula Township retaliated against Bonobo in violation of the First Amendment, (2) awarding Bonobo nominal damages; (3) awarding Bonobo its attorneys' fees under 42 U.S.C. § 1988 and also its costs incurred in bringing this challenge, and (4) awarding Bonobo any other relief the Court deems necessary and appropriate.

## COUNT II – OLD NOISE ORDINANCE VIOLATES DUE PROCESS AND THE FIRST AMENDMENT AGAINST BONOBO
### (42 U.S.C. § 1983)

57.     Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

58.     Plaintiffs have a First Amendment right to play music on their property.

59.     Plaintiffs regularly play music on their properties to entice guests to come to their properties and purchase their products.

60.     Peninsula Township's November 21, 2025 Letter to Bonobo was premised on the Old Noise Ordinance which was in place at the time.

9

61.     The Old Noise Ordinance defined a "noise disturbance" as "sound created by human activity with or without the use of any device, which by reason of its volume, intensity, location, or time of day impairs the health, welfare, or peace of another person of normal human sensibilities." (**Exhibit 3, § 102.**)

62.     The Old Noise Ordinance prohibited the "playing of any radio, television, phonograph, or other sound reproduction device, or musical instrument in such a manner or at such a volume as to be sufficiently audible to unreasonably annoy or disturb the quiet, comfort, or repose or person(s) in the vicinity." (***Id.*, § 103(A)**.)

63.     Peninsula Township penalizes violations of the Old Noise Ordinance as a municipal civil infraction. (***Id.*, § 104**.)

64.     Peninsula Township also treats violations of the Old Noise Ordinance as a reason to revoke a special use permit.

65.     Peninsula Township has asserted that Bonobo violated § 102 and § 103(A) of the Old Noise Ordinance on September 20, 2025. (**Exhibit 2: 11/21/25 Letter at 3**.)

66.     According to Peninsula Township, "Several people spoke with the Township and detailed the disturbance caused by this event." (***Id.***)

67.     Peninsula Township has never identified any of these "Several people" to Bonobo.

68.     Peninsula Township responded to a Freedom of Information Act request for "all ordinance complaint forms completed and submitted to the code enforcement officer with potential violation to the noise ordinance dated from January 1, 2025 through December 5, 2025" and its response did not contain a single noise complaint related to Bonobo nor any of the Plaintiffs. (**Exhibit 6: FOIA Response**.)

69. Peninsula Township has further asserted that Bonobo violated the Noise Ordinance on September 30, 2023 and September 13, 2024.  (**Exhibit 2: 11/21/25 Letter at 3**.)

70. Despite its assertion that Bonobo violated the Old Noise Ordinance on September 30, 2023 and September 13, 2024, Peninsula Township has not issued any written violations for those purported disturbances to Bonobo and has not taken any action against Bonobo for them.

71. Because of Peninsula Township's asserted violations, Peninsula Township is threatening to revoke Bonobo's special use permit and to shut down Bonobo's operations entirely.

72. Peninsula Township's Ordinance Enforcement Officer is David Sanger.

73. Mr. Sanger is also a Peninsula Township Trustee.

74. On multiple occasions before Bonobo's most recent alleged violation, Mr. Sanger has stated publicly and in his official capacity that the Old Noise Ordinance is "vague and unenforceable."

75. At a Township Board meeting on August 12, 2025, Mr. Sanger stated that the Old Noise Ordinance is "outdated and largely unenforceable" because it "relies on subjective judgment and lacks measurable standards."  (**Exhibit 1: 8/12/25 Meeting Minutes at 5**.)

76. At a Township Board meeting on September 9, 2025, Mr. Sanger stated that the Old Noise Ordinance "is vague and unenforceable."  (**Exhibit 7: 9/9/25 Meeting Minutes at 2**.)

77. Even as to the incident on September 20, 2025, a Saturday, Mr. Sanger admitted that Bonobo stopped the allegedly offending sound right at 9:00 p.m.

78. The Old Noise Ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it does not provide fair notice of the type of conduct prohibited.

11

79.    The Old Noise Ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it encourages subjective and discriminatory application by delegating to those empowered to enforce the ordinance the unfettered discretion to determine whether the Noise Ordinance has been violated.

80.    The Old Noise Ordinance is unconstitutionally vague because it is overbroad in violation of the First Amendment.

81.    The Michigan Court of Appeals has struck down language similar to § 102 because it penalized abstract ideals about what constitutes "peace and tranquility." *People of City of Grand Rapids v. Gasper*, 888 N.W.2d 116, 122 (Mich. Ct. App. 2016) ("A person making noise in a neighborhood is similarly required to guess whether law enforcement would consider his or her conduct as destroying the peace and tranquility of the neighborhood. Simply put, conduct that "destroy[s]" the peace and tranquility of some would not affect others to such an extent.").

82.    The Supreme Court of the United States has struck down language similar to § 103(A) because it penalized conducted which "annoyed" others. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) ("Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.")

83.    Peninsula Township's ordinance enforcement officer has already admitted that the Old Noise Ordinance is vague and unenforceable.

84.    Peninsula routinely cites prior allegations of zoning violation, regardless of whether those allegations result in a citation from the Township, as evidence to support future adverse action against property owners.

12

85.    Thus, without a determination from this Court that Bonobo's constitutional rights were violated by the Township's enforcement of the Old Noise Ordinance, Peninsula Township will use the allegations discussed above as a pretext to punish Bonogo in the future.

86.    Bonobo has suffered harm from the threat of revocation of its special use permit and to the continued viability of its business.

WHEREFORE, Bonobo requests that this Court enter an order (1) declaring that § 102 and § 103(A) of the Old Noise Ordinance are unconstitutionally vague in violation of the Due Process Clause and/or overly broad in violation of the First Amendment, (2) awarding Bonobo its attorneys' fees and costs incurred in bringing this challenge, and (3) awarding Bonobo any other relief the Court deems necessary and appropriate.

**COUNT III – NEW NOISE ORDINANCE VIOLATES DUE PROCESS AND THE FIRST AMENDMENT – ALL PLAINTIFFS**
**(42 U.S.C. § 1983)**

87.    Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

88.    Plaintiffs have a First Amendment right to play music on their property.

89.    Plaintiffs regularly play music on their property as a form of speech to entice guests to come to their properties and purchase their products as well as to entertain their guests.

90.    Bonobo, Bowers Harbor and all of WOMP's members are subject to and regulated by the New Noise Ordinance.

91.    Peninsula Township's New Noise Ordinance defines "plainly audible" as "any sound that can be detected by a person using his or her unaided hearing faculties."  (**Exhibit 5: New Noise Ordinance, § 2(A)**.)

92.    The New Noise Ordinance's definition of "plainly audible" means any sound above 0 dB.

13

93.     Peninsula Township's New Noise Ordinance defines a "noise disturbance" as "any sound that unreasonably annoys or disturbs a person of normal sensitivities, endangers or injures the safety or health of humans or animals, unreasonably disrupts the reasonable conduct of basic human activities such as conversing or sleeping, or endangers or injuries real or personal property." (*Id.*, § 2(B).)

94.     The New Noise Ordinance penalizes all of the following:

**Section 3: Anti-Noise Regulations**

A.     **General Regulation**: No person, firm, or corporation shall cause, create, continue, or assist in creating any noise disturbance; or as an owner, lessee, or occupant of the property on which the activity is located, permit the continuation of any noise disturbance if said noise disturbance is within their control.

B.     **Specific Violations**: The following noises and disturbances are hereby declared to be a violation of this ordinance but are not thereby to be construed to exclude other violations of this ordinance not specifically enumerated.

1.   **Amplified Sounds and Musical Instruments**: The playing of any radio, television, speaker, loudspeaker, stereo system, media player, phonograph, or other electronic or mechanical sound-producing device, including any musical instrument, in such a manner or with such a volume as to create a noise disturbance.  A noise disturbance shall be presumed where the [sic] any radio, television, speaker, loudspeaker, stereo system, media player, phonograph, or other electronic or mechanical sound-producing device, including any musical instrument, is operated between the hours of 10:00 p.m. and 7:00 a.m. and is plainly audible on property other than that from which the sound is being emitted.

2.   **Yelling and Vocal Noises**: Yelling, shouting, hooting, whistling, singing, or creating other vocal noises in such a manner or with such a volume as to create a noise disturbance.

3.   **Animals**: The keeping of any animal, bird, or fowl that emanates frequent or extended noise so as to create a noise disturbance, such as allowing or permitting any dog to bark repeatedly in an area where such barking is plainly audible on property other than that from which the sound is being emitted.

4.   **Construction**:  The construction, excavation, demolition, alteration, or repair of any building or premises, earth moving, tree cutting, or chipping operations in any part of the township, including the streets and highways, in such a manner as to create a noise disturbance, other than between the hours of 7:00

14

a.m. and 7:00 p.m. on Monday through Friday and between the hours of 8:00 a.m. and 6:00 p.m. on Saturday and Sunday, except in cases of urgent necessity in the interests of public health and safety. In such case, a permit shall be obtained from the township supervisor or person authorized by the supervisor that shall limit the periods that the activity may continue.

5. **Loading or Unloading**: The loading or unloading [of] any vehicle or trailer or the opening and destruction of bales, boxes, crates, and containers in such a manner to create a noise disturbance.

6. **Motor Vehicle**: The operation of any automobile, motorcycle, snowmobile, or other vehicle as to result in loud grating, grinding, rattling, screeching, exhaust, or other noise that would create a noise disturbance.

7. **Machinery, Equipment, or Mechanical Devices**: The operation of any machinery, equipment, or mechanical device so as to emit noise that because of volume, frequency, or duration would create a noise disturbance.

(*Id.*, § 3.)

95. Violations of the New Noise Ordinance are treated as municipal civil infractions.

(*Id.*, § 5(B).)

96. Peninsula Township also treats violations of the New Noise Ordinance as a basis to revoke permits, including special use permits, from Plaintiffs.

97. The New Noise Ordinance, including the definition of "noise disturbance," is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it does not provide fair notice of the type of conduct prohibited. *See Tanner v. City of Virginia Beach*, 277 Va. 432, 440–41 (2009) ("The references in the ordinance to "reasonable persons," and to persons of "reasonable sensitivity," do not provide a degree of definiteness sufficient to save the ordinance from the present vagueness challenge. Such terms, considered in their context, delegate to a police officer the subjective determination whether persons whom the police officer considers to be of reasonable sensitivity would find the noise detrimental to their life or health. Likewise, these terms leave to a police officer the determination whether persons the

15

police officer considers to be reasonable would be disturbed or annoyed in their comfort or repose by the particular noise at issue. Determinations of this nature invite arbitrary enforcement.").

98.    The New Noise Ordinance, including the definition of "noise disturbance," is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment because it encourages subjective and discriminatory application by delegating to those empowered to enforce the ordinance the unfettered discretion to determine whether the New Noise Ordinance has been violated.  *See Dupres v. City of Newport, R.I.*, 978 F. Supp. 429, 435 (D.R.I. 1997) (references to "annoying" or "unnecessary" sounds "invite law enforcement and others to make a determination as to whether the ordinance has been violated on purely subjective, content-based criteria").

99.    The New Noise Ordinance is also unconstitutionally vague because it is overbroad in violation of the First Amendment.

100.    For example, § 3(B)(1) automatically penalizes any noise emanating from any of Plaintiffs' properties that is "plainly audible" from sound-producing devices and musical instruments between the hours of 10:00 p.m. and 7:00 a.m.

101.    One WOMP member, Chateau Chantal, has traditionally hosted "Jazz at Sunset" on its property during the summer for more than three decades to entice customers to come to its property and purchase wine.

102.    Another WOMP member, Villa Mari, has traditionally hosted a Summer Solstice event for its wine club members to view sunrise—which occurs before 4:30 a.m. at that time—from the Mari Vineyards caves.  Villa Mari's Summer Solstice event can involve music.

103.    Bonobo, Bowers Harbor and WOMP's other members similarly would like to play music for their guests past 10:00 p.m. or before 7:00 a.m.

16

104.    The owner of another WOMP member has a young child that is often present at his winery either late at night or early in the morning, and the owner often plays music or television to soothe the young child.

105.    If any noise from "Jazz at Sunset," the Summer Solstice event, soothing the young child, or other similar events could be heard on any neighboring property—regardless of whether that noise actually bothered anyone—the Township could issue Chateau Chantal, Villa Mari, or any of the other Plaintiffs a violation under § 3(B)(1) and shut down that winery even though the winery is engaging in conduct protected by the First Amendment.

106.    The unconstitutionality of the New Noise Ordinance extends beyond just Plaintiffs. For example, a family living in a Peninsula Township subdivision where houses are placed close together might face enforcement should their baby wake up crying in the middle of the night and the family plays a lullaby near an open window to soothe the child.

107.    A group of friends sitting around a campfire with an acoustic guitar after 10:00 p.m. would also cause a violation of the New Noise Ordinance.

108.    Bonobo, Bowers Harbor, and WOMP's other members also employ many workers in their tasting rooms, production areas, and vineyards.

109.    Because Peninsula Township lacks any public transportation, these workers travel to the various wineries by car.

110.    These workers often stay past 10:00 p.m. or arrive before 7:00 a.m., depending on the season.

111.    If these workers play music, listen to the news, or listen to podcasts in their car on their way to or from work, sound generated from their car stereo systems is likely audible at the property line when those workers enter or leave the property and would constitute a prima facie

17

violation under § 3(B)(1) because those workers could be deemed to be within the wineries' control.

112.    The Township has also been warned, during public meetings before the adoption of the New Noise Ordinance, that the New Noise Ordinance will be criminalizing children jumping on a trampoline at night, waterfront owners sitting around the fire and listening to music at night, and dogs barking when their owner lets them outside to use the bathroom.

113.    Absent evidence that noise is actually disturbing someone else, Peninsula Township has no basis to impose a violation for noise that is "plainly audible."  *See, e.g.*, *Duffy v. City of Mobile*, 709 So. 2d 77, 81 (Ala. Crim. App. 1997) (striking down a noise ordinance which provided "that if the sound is merely 'plainly audible' at a distance of 50 feet, it is prima facie evidence of a violation of the ordinance" because it "seems to remove or negate the requirement that anyone be annoyed or disturbed by the noise").

114.    The New Noise Ordinance is overbroad because it bans more protected First Amendment conduct than is necessary to achieve its goals.

115.    Bonobo, Bowers Harbor and WOMP's other members fear Peninsula Township's arbitrary and unconstitutional enforcement of the New Noise Ordinance against them.

116.    Bonobo, Bowers Harbor, and WOMP's other members have declined to engage in activities protected by the First Amendment for fear of violating the New Noise Ordinance and have therefore suffered harm through a chilling effect from Peninsula Township's threatened enforcement of its New Noise Ordinance.

WHEREFORE, Plaintiffs that this Court enter an order (1) declaring that the New Noise Ordinance, both on its face and in and Peninsula Township's application of the New Noise Ordinance, is unconstitutional in violation of the Due Process Clause of the Fourteenth

18

Amendment and in violation of the First Amendment, (2) awarding Plaintiffs their attorneys' fees and costs incurred in bringing this challenge, and (3) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

### COUNT IV – INTERFERENCE WITH DUE PROCESS LIBERTY INTEREST (42 U.S.C. § 1983) – ALL PLAINTIFFS

117. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

118. Bonobo, Bowers Harbor, and every other WOMP member have a liberty interest, via the Due Process Clause of the Fourteenth Amendment, in operating their respective business free from arbitrary governmental interference. *See, e.g.*, *Sanderson v. Village of Greenhills*, 726 F.2d 284 (6th Cir. 1984); *Chalmers v. City of Los Angeles*, 762 F.2d 753 (9th Cir. 1985); *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969); *Small v. United States*, 333 F.2d 702, 704 (3d. Cir. 1964).

119. A government acts arbitrarily when it enforces restrictions that do not exist.

120. A government acts arbitrarily when it refuses to follow lawful court orders.

121. Peninsula Township has threatened to revoke Bonobo's special use permit and shut it down if it does not cease hosting events and providing food service.

122. Peninsula Township's position is based, in part, on its argument that it has "no record that Bonobo was ever granted guest activity use approval via the Township." (**Exhibit 2: 11/21/25 Letter at 2**.)

123. In entering judgment in favor of Bonobo, among others, this Court already found that the Township approved Bonobo for guest activity uses. (*See* WOMP Case, ECF No. 623, PageID.31448–PageID.31449.)

124. Therefore, the Township is barred by res judicata and/or collateral estoppel from relitigating the issue of whether the Township approved Bonobo for guest activity uses.

45486403.3/159392.00003

125.    The Township's position that Bonobo was not approved for guest activity uses is arbitrary and therefore violates the Due Process Clause of the Fourteenth Amendment.

126.    The Township also asserts that Bonobo has no vested right in hosting events even though this Court already ruled that Bonobo was damaged from the Township's refusal to allow Bonobo to host events in the past.  (**Exhibit 2: 11/21/25 Letter at 3**.)

127.    At trial, Bonobo presented evidence that it had hosted events over the years and that some of these events complied with the Township's unconstitutional ordinances while others were in violation of the unconstitutional ordinances.

128.    Therefore, the Township is barred by res judicata and/or collateral estoppel from relitigating the issue of whether Bonobo is allowed to host events.

129.    After the Township repealed the offending ordinances, Bonobo became a vested nonconforming use with the full ability to host events, and nothing has changed in Bonobo's ability to host events.

130.    The Township also asserts that Bonobo cannot serve food.  (**Exhibit 2: 11/21/25 Letter at 5**.)

131.    In making that assertion, the Township ignores Bonobo's special use permit, which states in relevant part that "The Township Board finds that all uses permitted onsite shall take place within the principal structure meetings and special dinners shall be allowed wherein the participants are not registered guests of the chateau-winery and such meetings and special dinners are for agricultural purposes/education only as permitted under the Peninsula Township Zoning Ordinance."

132.    The Township also asserts that Bonobo cannot engage in "facility rentals."

20

45486403.3/159392.00003

133.    The Township is conflating "facility rentals" with events to try and circumvent this Court's rulings on events from the WOMP Case.

134.    Bowers Harbor and the other WOMP members are similarly situated to Bonobo both in the proofs provided in the WOMP trial and the Court's ruling.

135.    Absent a declaration from this Court, Bonobo, Bowers Harbor, and WOMP's other members will be harmed by Peninsula Township's arbitrary and unlawful interpretation of ordinance restrictions following the WOMP Case.

WHEREFORE, Plaintiffs request that this Court enter an order (1) declaring that, consistent with the findings in the WOMP Case, Plaintiffs have vested rights in hosting events at their respective wineries, (2) enjoining Peninsula Township from enforcing any restrictions on events or "facility rentals," however phrased, (3) declaring that Bonobo has the right to serve food at its winery and enjoining the Township from preventing food service at all Plaintiff wineries; (4) awarding Plaintiffs their attorneys' fees and costs incurred in bringing this challenge, and (5) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

## COUNT V – STATE LAW PREEMPTION

136.    Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

137.    The Michigan Liquor Control Code allows on-premises licensees like wineries to operate restaurants.  *See* Mich. Comp. Laws § 436.1536(7)(h) ("A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises.").

138.    Bonobo, Bowers Harbor, and WOMP's other members are all on-premise licensees and each member holds at least one of a wine maker, small wine maker, small distiller, or brandy manufacturer license issued by the Michigan Liquor Control Commission.

21

45486403.3/159392.00003

139.    The Michigan Liquor Control Code defines "restaurant" to mean "a food service establishment defined and licensed under the food law, 2000 PA 92, MCL 289.1101 to 289.8111." Mich. Comp. Laws § 436.1111(5).

140.    Under the Michigan Food Law, a "food service establishment" is defined as  "a fixed or mobile restaurant, coffee shop, cafeteria, short order cafe, luncheonette, grill, tearoom, sandwich shop, soda fountain, tavern, bar, cocktail lounge, nightclub, drive-in, industrial feeding establishment, private organization serving the public, rental hall, catering kitchen, delicatessen, theater, commissary, food concession, or similar place in which food or drink is prepared for direct consumption through service on the premises or elsewhere, and any other eating or drinking establishment or operation where food is served or provided for the public."  Mich. Comp. Laws § 289.1107(t).

141.    The Township has taken the position that "the provision of full-service meals is not allowable within the A-1 district."  (**Exhibit 2: 11/21/25 Letter at 4**.)

142.    The "provision of full-service meals" is equivalent to a restaurant.  *See* Mich. Comp. Laws § 289.1107(t); Mich. Comp. Laws § 436.1111(5).

143.    Peninsula Township does not allow any wineries to be operated in any district except the A-1 district.

144.    Peninsula Township, therefore, does not allow any winery to operate a restaurant anywhere in Peninsula Township.

145.    While the Michigan Liquor Control Code (R. 436.1003) does require licensees to "comply with all state and local building, plumbing, zoning, sanitation, and health laws, rules, and ordinances as determined by the state and local law enforcement officials who have jurisdiction over the licensee," this Court in the WOMP case rejected an argument that this rule saved local

45486403.3/159392.00003

ordinances from preemption "because only zoning rules that are not contrary to law are enforceable [and b]ecause the Court ruled that numerous sections of these zoning ordinances are unconstitutional or contrary to law, they are preempted."  (Case No. 1:20-cv-1008 ECF 211, PageID.7809.)

146.    But for Peninsula Township's ban on wineries operating restaurants, Bonobo, Bowers Harbor, and WOMP's other members would serve food with their wine as a way to market their wine with the goal of eventually selling more to customers.

147.    Peninsula Township's ban on restaurants at wineries in the A-1 district conflicts with, and is preempted by, Mich. Comp. Laws § 436.1536(7)(h).

WHEREFORE, Plaintiffs request that this Court enter an order (1) declaring that Peninsula Township's ban on wineries operating restaurants and providing "full-service meals" is preempted by Michigan law and is unlawful and unenforceable, (2) awarding Plaintiffs their attorneys' fees and costs incurred in bringing this challenge, and (3) awarding Plaintiffs any other relief the Court deems necessary and appropriate.

Respectfully submitted,

By: /s/ Joseph M. Infante
    Joseph M. Infante (P68719)
    Stephen M. Ragatzki (P81952)
    Christopher J. Gartman (P83286)
    MILLER, CANFIELD, PADDOCK
    and STONE, PLC
    99 Monroe Avenue NW, Suite 1200
    Grand Rapids, MI 49503
    (616) 776-6333
    infante@millercanfield.com
    gartman@millercanfield.com
    ragatzki@millercanfield.com

45486403.3/159392.00003

Barry P. Kaltenbach
227 Monroe Street, Suite 3600
Chicago, IL 60606
(312) 460-4200
kaltenbach@millercanfield.com

*Attorneys for Plaintiffs*

Dated: February 10, 2026

45486403.3/159392.00003